**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| SHELLEY S.,[1] | : | Case No. 2:22-cv-02516 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ORDER

---

Plaintiff filed an application for Disability Insurance Benefits in June 2018.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because Plaintiff was not under a "disability" as defined in the Social

Security Act. The Appeals Council granted Plaintiff's request for review, vacated the

ALJ's decision, and remanded the case to the ALJ for resolution of several issues.  On

remand, the ALJ held a second hearing and issued a written decision, again concluding

that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Plaintiff seeks an order remanding this matter to the Commissioner for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

## I.      BACKGROUND

Plaintiff asserts that she has been under a disability since February 16, 2016.[2] At that time, Plaintiff was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a high-school education. *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 9) is summarized in the ALJ's decision ("Decision," Doc. No. 9-2 at PageID 41-64), Plaintiff's Statement of Errors ("SE," Doc. No. 10) and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

---

[2] Plaintiff initially alleged disability beginning February 14, 2015. (AR, Doc. No. 9-5 at PageID 284.) In her June 2021 pre-hearing brief, Plaintiff subsequently amended the alleged disability onset date to February 16, 2016. (*Id.* at PageID 325.)

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since February 16, 2016, the amended alleged onset date. |
| Step 2: | Plaintiff has the severe impairments of multiple sclerosis and obesity. |

4

| Step 3: | Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
|---|---|
| Step 4: | Plaintiff's residual functional capacity (RFC), or the most Plaintiff can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following exceptions: "[Plaintiff] is limited to occasional operation of foot controls with [the] right foot; occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, and crawling; frequent handling and fingering with the right hand; and she must avoid workplace hazards such as unprotected heights and moving machinery. She is limited to simple routine and repetitive tasks, involving only simple work related decisions and with few, if any, workplace changes. She can tolerate no customer service responsibilities." |
| | Plaintiff is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Decision, Doc. No. 9-2 at PageID 44-58.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 58.)

## B.    The ALJ's Symptom Severity Analysis

After describing the applicable legal standard, the ALJ summarized Plaintiff's symptoms, subjective complaints, and testimony that she provided during the April 2020 and July 2021 hearings. (Decision, Doc. No. 9-2 at PageID 49-51.) The ALJ summarized the medical records and acknowledged the subjective complaints and daily activities that Plaintiff reported to her medical providers. (*Id.* at PageID 51-55.) The ALJ also described

5

medical opinions, a medical expert's hearing testimony and prior administrative findings. (*Id.* at PageID 50-51, 55-56.) The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at PageID 51.) He explained:

> With respect to [Plaintiff's] multiple sclerosis related symptoms including pain, headaches, dizziness, vision issues, and "brain fog," the record does support some ongoing problems and limitations from the alleged onset date forward. However, the record also supports that [Plaintiff's] condition was often stable or well controlled with medication infusion treatment, she received benefit from physical therapy, and her ability to conduct daily activities such as selfcare, shopping, and driving were often intact. Examinations showed some pain and weakness in her right upper and lower extremities, but her range of motion and gait were generally normal. Indeed, she reported at times that she could sit for multiple hours at a time, stand for two hours at a time, and walk for an hour at a time, and she could lift upwards of 20-30 pounds. She also reported an ability to walk five miles during another office visit. Examinations also often indicated [Plaintiff] was alert and oriented with little indication of difficulty with word findings. Thus, the overall record is not fully supportive of [Plaintiff's] alleged limitations.

(*Id.*)

The ALJ also explained his decision to include certain restrictions in the RFC. (Decision, Doc. No. 9-2 at PageID 56.) He limited Plaintiff to sedentary work because of her complaints of fatigue, headaches and neuropathic pain, and also because of balance difficulties documented during some physical examinations. (*Id*.) He limited Plaintiff to occasional foot controls with the right foot, and frequent handling and fingering with the right hand, due to right-sided weakness and sensation issues documented during some physical examinations. (*Id*.) And although the ALJ found little support in the record for

6

Plaintiff's claimed difficulties with memory and finding words, he imposed task-related limitations based upon Plaintiff's complaints of a mild cognitive impairment. (*Id.*)

### C.    Treating Neurologist Aaron Boster, M.D.

In June 2020, treating neurologist Dr. Boster drafted a letter in support of Plaintiff's application for disability benefits. (AR, Doc. No. 9-9 at PageID 1163-64.) Dr. Boster stated that Plaintiff had "accrued significant neurological disability including pathologic and profound fatigue and cognitive impairments which are worsened as the day goes on, when she is stressed out, overly tired or in the setting of high ambient temperatures." (*Id.* at PageID 1163.) He opined that "[Plaintiff's] chronic neurologic symptoms have a significant impact on her quality of life and her ability to conduct her day-to-day activities, or to maintain gainful employment." (*Id.*) Dr. Boster further opined that Plaintiff's "[p]athologic fatigue motor fatigue neuropathic pain in cognitive fog [sic] will limit her ability to live her best life to actively participate in of [sic] activities of daily living, and it [sic] is unlikely to work in a meaningful way." (*Id.* at PageID 1164.)

The ALJ concluded that Dr. Boster's opinion was generally unpersuasive because it was vague and did not specifically assess Plaintiff's ability to function. (Decision, Doc. No. 9-2 at PageID 56.) He also found the opinion unpersuasive because "the record as a whole, and the examinations showing normal strength, gait, sensation, and coordination in particular, support a greater functional capacity than Dr. Boster has opined." (*Id.*) The ALJ did, however, credit Dr. Boster's assertions about Plaintiff's right-sided limitations, and accounted for them in the RFC. (*Id.*) He also considered Dr. Boster's neurological testing results, compared them with normal mental status examinations in the record and

a medical expert's testimony, and then included certain restrictions that accounted for a mild cognitive limitation in the RFC. (*Id.* at PageID 56.)

> **D.    Consultative Examiner Christopher Tanga, D.O.**

Dr. Tanga performed a consultative physical examination in December 2018. (AR, Doc. No. 9-7 at PageID 428-35.) Plaintiff's physical examination findings were largely normal except for a measurable weakness in her upper and lower right-side extremities. (*Id.*) Dr. Tanga opined: "It does appear that she has right-sided muscle weakness and assuming that the neurologist concurs with her diagnosis of multiple sclerosis it seems reasonable that given her severe symptomatology that she would only qualify for less than sedentary positions." (*Id.* at PageID 430.)

The ALJ concluded that Dr. Tanga's opinion was unpersuasive because it did not objectively assess Plaintiff's functional abilities. (Decision, Doc. No. 9-2 at PageID 55.) The ALJ also found Dr. Tanga's opinion to be "somewhat overstate[d] . . . given [Plaintiff's] largely normal range of motion and normal gait during examinations as well as her stated ability to walk significant distances (five miles) at points in the record." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff argues that the ALJ reversibly erred when evaluating her symptom severity and formulating the RFC. For the reasons discussed below, set forth below, the Court disagrees. Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Court must affirm the ALJ's decision. *Blakley*, 581 F.3d at 406.

## A.     The ALJ Did Not Reversibly Err When Evaluating Plaintiff's Symptom Severity.

Plaintiff challenges the ALJ's evaluation of her symptom severity on several grounds. None of these arguments is well-taken.

### 1.     Applicable law.

The ALJ's evaluation of Plaintiff's symptoms was governed by a detailed Social Security regulation (20 C.F.R. § 416.1529) and Social Security Ruling (SSR) 16-3p, which  mandates a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[3]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. As part of

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

this analysis, the ALJ must decide whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8.  The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *9. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that these statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

10

6.     Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.     Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

        **2.**     **The ALJ's conclusions regarding plaintiff's symptom severity comply with the governing legal framework and are supported by sufficient evidence.**

Plaintiff argues that the ALJ "failed to account for the total limiting effects of Plaintiff's multiple sclerosis . . . ." (SE, Doc. 10 at PageID 1247, 1249.) Relatedly, she argues that the ALJ's findings are not "logically bridged to the record." (*Id*. at PageID 1252.) Plaintiff contends that her self-reported limitations, "*even if partially credited*, establish that she cannot meet the basic demands of sustained, full-time competitive work . . . ." (*Id*. at PageID 1254 (emphasis in original).) She asserts that "[t]he record patently supports the standing/walking and hand use limitations described by Plaintiff and . . . confirmed by SSA's consultative examiner and [her] treating neurologist." (*Id*. at PageID 1255.) Finally, Plaintiff argues that the ALJ's conclusion that her self-reported limitations are not disabling is unsupported by substantial evidence. (*Id*. at PageID 1262.)

The Court disagrees and finds that the ALJ evaluated Plaintiff's symptoms in accordance with the governing legal framework. Further, the ALJ's conclusions are supported by substantial evidence. Therefore, the Court must affirm the ALJ's decision.

The ALJ discussed a slew of Plaintiff's self-reported complaints in his decision, including many of those cited in Plaintiff's argument. The ALJ noted her complaints of persistent fatigue, "brain fog," cognitive issues, right-sided pain and weakness, dizziness, vision issues, muscle spasms, and difficulty sleeping. (Decision, Doc. No. 9-2 at PageID 50-51; *c.f.* SE, Doc. No. 10 at PageID 1252-53.) The ALJ described Plaintiff's testimony of having migraine headaches of varying severity approximately five to seven days per month. (Decision, Doc. No. 9-2 at PageID 50-51.) The ALJ acknowledged Plaintiff's reports of finding it difficult to hold a pen, cook, stir, hold a spatula, and grasp items with her right hand, and her testimony that she no longer engages in past hobbies of crafting or reading. (*Id.*) The ALJ cited Plaintiff's testimony that she needs to nap as many as three to four times per day, that she has "bad days" – which occur more often than "good days" – where she is "not able to do much more than take medication and lounge around her house," and that her medications do not provide significant relief of her symptoms. (*Id.*)

The ALJ also cited evidence showing that Plaintiff repeatedly sought treatment for these complaints, and described them to her providers. (Decision, Doc. No. 9-2 at PageID 51-54.) These complaints included constant right-sided pain and weakness, fatigue, headaches, right-sided neuropathy, dizziness, decreased energy, problems with processing and memory, and leg spasms. (*Id.*) The ALJ noted that diagnostic imaging and testing throughout the record confirmed the diagnosis of multiple sclerosis. (*Id.* at PageID

12

54.) The ALJ cited to brain and cervical spine MRI reports that showed lesions, white matter signal abnormalities, and plaques compatible with multiple sclerosis, although he also noted that the lesions were generally stable and that the imaging showed no significant atrophy. (*Id.*) The ALJ also acknowledged abnormal examination findings documented by Plaintiff's providers, including right upper and lower extremity weakness, right leg foot drop, a slowed gait, mildly impaired tandem walking, slowed upper extremity reaction upon 9-Hole Peg testing, decreased sensation in the upper extremities, and some cognitive impairment upon neurological testing. (*Id.* at PageID 52-54.)

The ALJ compared this evidence to records that showed decreased but adequate—and sometimes normal—strength in the extremities, normal coordination, normal fine motor skills, normal range of motion, and a normal gait with stable balance. (Decision, Doc. No. 9-2 at PageID 51-54.) The ALJ noted examinations that showed normal mental status findings such as normal cognition, normal language function regarding fluency and comprehension, a normal mood and affect, logical and linear thought processes, and normal judgment. (*Id.*)

In addition to this objective medical evidence, the ALJ cited Plaintiff's reports of experiencing some benefit from medication and treatment. (Decision, Doc. No. 9-2 at PageID 51-54.) For example, the ALJ noted Plaintiff's December 2018 statement that she could dress and feed herself, drive a car, sit for multiple hours at a time, stand for two hours at a time, walk for an hour at a time, and lift more than twenty pounds—although the ALJ also noted Plaintiff's January 2019 complaint of ongoing pain and poor memory. (*Id*. at PageID 52.) The ALJ cited physical therapy progress notes dated in early 2020

13

that documented Plaintiff's reports of "walking a lot for exercise and that her energy level was good," although she experienced fatigue after "busy days." (*Id.*) The ALJ cited Plaintiff's March 2020 statement that physical therapy sessions were "extremely helpful" and that stretching helped "tremendously" with cramping and spasms. (*Id.*)

After considering the evidence in the record, the ALJ concluded that the balance of the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 9-2 at PageID 51.) The ALJ did not completely discount her symptoms, however; instead, the ALJ accounted for the evidence by limiting Plaintiff to the reduced range of sedentary work in the RFC. (*Id.* at PageID 49, 56.) Even if the Court could draw a different conclusion that is supported by substantial evidence in the record, it is not permitted to re-weigh the evidence. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997). Instead, if the Court finds that the ALJ's conclusions are supported by substantial evidence—and it does—then it must affirm the ALJ's decision.

Plaintiff contends that the ALJ's analysis is "based upon a highly selective version of the record and/or the drawing of inapt conclusions from agreed-upon facts and/or outright failure to discuss probative facts." (SE, Doc. No. 10 at PageID 1262.) Plaintiff specifically challenges the ALJ's consideration of Plaintiff's daily activities, her pain and treatment, and Plaintiff's work history. (*Id.* at PageID 1262-66.) But it is well established that this Court must give great weight and deference to an ALJ's credibility assessment.[4]

---

[4] The current term used for evaluating subjective complaints is "consistency" instead of "credibility." *See Dooley v. Comm'r of Soc. Sec.,* 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (SSR 16-3p, 2017 WL 5180304 (Mar. 16, 2016, revised and republished Oct. 25, 2017) removed the term "credibility" only to "clarify that subjective symptom evaluation is not an examination of an individual's character.").

*Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 801 (6th Cir. 2004). An ALJ's credibility findings "are virtually unchallengeable" absent compelling reasons. *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013). No such reason exists here.

The ALJ did not err when analyzing Plaintiff's daily activities. SSR 16-3p requires an ALJ to consider a claimant's daily activities when evaluating the severity of her symptoms. SSR 16-3p at *7. The ALJ's analysis of such activities must "be consistent with and supported by the evidence." *Id*. at *10. Similarly, the Sixth Circuit recognizes that an ALJ "may consider a claimant's household and social activities in evaluating complaints of daily pain." *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, the ALJ "may not take part of [Plaintiff's] testimony and disregard the rest." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003).

Here, the ALJ complied with the applicable legal framework when he considered Plaintiff's daily activities. As discussed above, the ALJ acknowledged Plaintiff's reports of her daily activities—including both what she can do and what she finds to be difficult. For instance, the ALJ noted that "[Plaintiff] testified [that] she can do laundry, take a shower, and wash her hair . . . [but] on a bad day she is not able to do much more than take medication and lounge around her house." (Decision, Doc. No. 9-2 at PageID 51.) Likewise, the ALJ discussed Plaintiff's exercise habits, her abilities to "perform household tasks and hold items such as a phone or a pen" and her "activities of daily living such as self-care, driving, shopping, and going on walks." (*Id.* at PageID 52-53, 55). The ALJ compared these statements with the objective medical evidence discussed

15

above and concluded that that the balance of the evidence does not support Plaintiff's alleged symptom severity and degree of functional limitations. (*Id.* at PageID 51.)

Plaintiff claims that the ALJ erred because "a claimant's ability to perform sporadic daily activities do [sic] not contradict a claimant's claim of disability" and because "none of these activities, even exactly as the ALJ described them, support a finding that [Plaintiff] can [perform sedentary work] on a sustained full-time basis." (SE, Doc. No. 10 at PageID 1263-64.) But the ALJ did not directly equate Plaintiff's reports of daily activities with the ability to perform work activity. Instead, the ALJ considered Plaintiff's daily activities as just one factor in his analysis, as required by 20 C.F.R. § 416.1529 and SSR 16-3p. The ALJ's evaluation of Plaintiff's daily activities is consistent with the governing legal framework and does not warrant reversal.

Plaintiff also argues that the ALJ erred by discussing Plaintiff's ability to walk for extended periods of time without acknowledging that "Plaintiff was regularly instructed to exercise and . . . used walking as a way of relieving symptoms in her legs." (SE, Doc. No. 10 at PageID 1263.) But the *reason* for Plaintiff's frequent walking (i.e., to alleviate pain and leg spasms) does not change the fact that she was capable of doing so. The ALJ was entitled to consider both aspects, and did so. For instance, when discussing a time that Plaintiff walked five miles, the ALJ noted that she was "try[ing] to alleviate [leg] spasms." (Decision, Doc. No. 9-2 at PageID 52.) Similarly, the ALJ acknowledged Plaintiff's February 2020 reports that "she was walking a lot for exercise" and "tried to get to the gym a few times a week in the winter." (*Id.*) Moreover, the ALJ acknowledged Plaintiff's reported difficulties with walking. The ALJ cited her testimony of sometimes

16

having difficulty walking for more than ten minutes "due to some foot drag and increased pain on the right." (*Id.* at PageID 50.) He acknowledged Plaintiff's report of fatigue after "busy days" when she walked a lot. (*Id.* at PageID 52.) He further cited examinations that showed a slowed gait and mildly impaired tandem walking. (*Id.* at PageID 53.) The ALJ appropriately considered all of this evidence, and did not err by doing so.

Similarly, the ALJ provided a detailed and reasoned evaluation of Plaintiff's pain complaints that is supported by substantial evidence. The ALJ described these complaints when he summarized Plaintiff's testimony and her visits to medical providers. (Decision, Doc. No. 9-2 at PageID 50-54.) The ALJ then compared Plaintiff's pain complaints to the objective medical evidence and Plaintiff's treatment, and although he did not find her pain to be disabling, he did include limitations in the RFC to account for the balance of the evidence. (*Id.*) The ALJ's analysis of Plaintiff's pain complaints complied with the governing legal framework and his conclusions are supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred by failing to consider Plaintiff's "virtually uninterrupted 18[-]year work history" prior to the alleged disability onset date. (SE, Doc. No. 10 at PageID 1265.) However, although ALJs must *consider* "information about [a claimant's] prior work record" when determining the severity of a claimant's symptoms (*see* 20 C.F.R. § 404.1529(c)(3)), "there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision." *Swartz v. Comm'r of Soc. Sec.*, No. 1:10-CV-00605, 2011 WL 4571877, at *7 (S.D. Ohio Aug. 18, 2011) (Bowman, M.J.). Moreover, the Sixth Circuit has held that ALJs are "***not*** required to explicitly discuss [a claimant's] work history when assessing his credibility." *Dutkiewicz*

17

*v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 433 (6th Cir. 2016) (emphasis added). Thus, the ALJ did not err by declining to discuss Plaintiff's work history.

For all of these reasons, the Court finds that the ALJ's evaluation of Plaintiff's symptom severity complied with applicable legal requirements, and his conclusions are supported by substantial evidence. Therefore, these arguments are not well-taken.

### B.    The ALJ's RFC Is Supported By Substantial Evidence

A claimant's RFC describes the most that she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of limitations from his impairments and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5). Notably, "[t]he determination of a plaintiff's RFC is entirely within the purview of the ALJ, and this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

18

Plaintiff challenges the ALJ's RFC because, in her view, it does not account for her "significant standing/walking and handling limitations." (SE, Doc. No. 10 at PageID 1254.) As noted above, the substantial evidence standard precludes this Court from re-weighing the evidence and deciding whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Instead, this Court is limited to determining whether the ALJ's findings are supported by substantial evidence. Based upon the evidence discussed above, the Court finds that the ALJ's RFC is so supported.

Specifically, the RFC limitation for frequent right-sided handling and fingering is supported by substantial evidence. The ALJ recognized that the record reflects "right[-]sided weakness and sensation issues" and that the December 2018 consultative physical examination revealed "noticeably weaker" right-sided strength at 3/5. (Decision, Doc. No. 9-2 at PageID 53, 56.) The ALJ acknowledged that Dr. Boster's "suggestion of some limitation to the right upper extremity is broadly supported." (*Id.*)  However, the ALJ also noted findings that Plaintiff's "fine motor skills were without deficiency" and that her "right arm and right leg [were] slightly weaker than the left, but still with adequate strength." (*Id.* at PageID 53 (citing AR, Doc. No. 9-7 at PageID 429; Doc. No. 9-8, at PageID 726).) This objective medical evidence constitutes substantial evidence that supports the ALJ's decision to limit Plaintiff to frequent handling and fingering with the right hand. As noted, the Court is not permitted to re-weigh the evidence.

 The ALJ's decision to limit Plaintiff to the standing and walking requirements of sedentary work is similarly supported by substantial evidence. The ALJ acknowledged examinations that showed abnormalities such as decreased balance and stability, right leg

foot drop, and a slowed gait. (Decision, Doc. No. 9-2 at PageID 52-53.) He compared these findings to other normal findings and explained that Plaintiff "generally had a normal gait and was noted to not be a fall risk during some examinations." (AR, Doc. No. 9-2 at PageID 53.) And while the ALJ acknowledged Plaintiff's reported difficulties with walking, he also considered evidence of her ability to walk. (*Id*.) Because the ALJ's conclusions are supported by substantial evidence, the ALJ did not err by failing to include additional exertional limitations in the RFC.

Finally, Plaintiff argues that the ALJ erred by failing to defer to the opinions of consultative examiner Dr. Tanga and treating neurologist Dr. Boster. (SE, Doc. No. 10 at PageID 1255.) The Court disagrees. Instead, the Court finds both that the ALJ complied with the governing legal framework when he considered both of these medical opinions, and that his conclusions are supported by substantial evidence.

The ALJ found that Dr. Boster's opinion was "not persuasive overall." (Decision, Doc. No. 9-2 at PageID 56.) The ALJ explained that Dr. Boster's opinion was vague and did not "provide a specific assessment of [Plaintiff's] ability to function." (*Id.*) The ALJ concluded that although the record suggested some limitation of the right upper extremity, the normal examination findings did not support the extent of impairment that Dr. Boster opined. (*Id*.) The ALJ therefore limited Plaintiff to frequent right-sided handling and fingering. (*Id.*) The ALJ also cited Dr. Boster's cognitive test results and compared them to other mental status examinations in the record, as well as the opinion of the medical expert at the hearing, to explain why he found no more than mild mental functional limitations. (*Id.*) This Court concludes that the ALJ's analysis addressed the

20

supportability and consistency factors in compliance with the applicable regulations (20 C.F.R. § 404.1520c(c)(1), (c)(2)), and his findings are supported by substantial evidence.

With regard to Dr. Tanga's assessment, the ALJ found that Dr. Tanga's opinion was "not persuasive." (Decision, Doc. No. 9-2 at PageID 55.) The ALJ explained that Dr. Tanga's opinion was "of limited value" because Dr. Tanga did not provide a function-by-function assessment of Plaintiff's abilities. (*Id.*) The ALJ also cited to Dr. Tanga's examination findings, other examinations in the record, and Plaintiff's self-reported walking abilities to support the conclusion that Dr. Tanga "somewhat overstate[d] [Plaintiff's] exertional limitations." (*Id.*) Significantly, Dr. Tanga's statement that Plaintiff would "only qualify for less than sedentary positions" is a "statemen[t] on [an issue] reserved to the Commissioner" because it states the functional exertional level at which a claimant can perform. 20 C.F.R. § 404.1520b(c)(3)(v). Dr. Tanga's statement is therefore "inherently neither valuable nor persuasive," and the ALJ was not required to provide an analysis of how he considered this evidence. 20 C.F.R. § 404.1520b(c). The Court concludes that the ALJ's analysis of Dr. Tanga's opinion addressed the supportability and consistency factors as required by 20 C.F.R. § 404.1520c(c)(1) and (c)(2)), and the ALJ's findings are supported by substantial evidence.

Therefore, the Court finds that the ALJ did not err in assessing the RFC.

## VI. CONCLUSION

For the reasons discussed above, the ALJ properly applied the governing legal framework and substantial evidence supports his conclusions. Accordingly, Plaintiff's Statement of Errors lacks merit.

21

**IT IS THEREFORE ORDERED THAT**:

1.   Plaintiff's Statement of Errors (Doc. No. 10) is OVERRULED;

2.   The Court AFFIRMS the Commissioner's non-disability determination; and

3.   The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge